*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NICOLE PAWLOWSKI,

Plaintiff-Appellant,

v

MARY KOSAR,

Defendant-Appellee,

and

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

Defendant.

UNPUBLISHED
May 30, 2024

No. 365803
Wayne Circuit Court
LC No. 21-008261-NI

Before: FEENEY, P.J., and M. J. KELLY and RICK, JJ.

PER CURIAM.

In this no-fault action, plaintiff appeals as of right an order granting summary disposition to defendant under MCR 2.116(C)(10) (no genuine issue of material fact). We affirm.

## I. FACTUAL BACKGROUND

This action arises out of a car accident that occurred in July 2018, in Emmet County, Michigan. When the accident happened, plaintiff was the passenger in a car that was stopped on M-68, at an intersection with US-31. Defendant rear-ended the car, causing injury to plaintiff. Plaintiff filed a complaint, naming defendant and Farm Bureau General Insurance Company as defendants, and alleging one count of breach of contract against Farm Bureau only. Plaintiff claimed that Farm Bureau was required to pay her no-fault personal protection insurance benefits because defendant was uninsured when the accident occurred. Farm Bureau was dismissed as a

-1-

party by stipulation on August 16, 2021, and the case continued with defendant Kosar as the only remaining party.[1]

In March 2022, defendant filed a motion for a *Daubert*[2] evidentiary hearing regarding the qualification of one of plaintiff's expert witnesses. Defendant indicated that plaintiff sought to have Margaret Rorick, a nurse practitioner, qualified as an expert. Defendant further explained that plaintiff wanted to introduce testimony from Rorick to link her recent diagnosis of fibromyalgia with the car accident. Defendant noted that a qualified expert witness's testimony would be necessary in order for plaintiff to establish a causal link between her fibromyalgia diagnosis and the car accident. Defendant questioned whether Rorick could provide reliable testimony to demonstrate causation and asked that an evidentiary hearing be held to explore the issue.

In response, plaintiff argued that defendant was not seeking a *Daubert* hearing to determine whether Rorick could be qualified as an expert, but rather sought to exclude her as an expert on causation as the first step toward filing a motion for summary disposition. Plaintiff further stated that the "court should rule that defendant's motion to exclude expert testimony at this juncture is wholly inappropriate and untimely because it is not made with the expectation of an actual trial being conducted, and is instead, being requested for an improper purpose or use."

On September 12, 2022, the trial court granted the motion for a *Daubert* hearing. A hearing on the matter was held in October 2022. Rorick testified that she is a board-certified nurse practitioner and previously worked as a registered nurse. Rorick treated plaintiff on several occasions and stated that she was willing to testify that plaintiff's fibromyalgia was caused by the car accident because plaintiff did not develop symptoms of the disease until after the accident. When asked how she arrived at a diagnosis of fibromyalgia, Rorick testified that she input plaintiff's symptoms into an online medical database called Epocrates. Rorick testified that according to the Epocrates database, fibromyalgia can be brought on by trauma, including the trauma of a car accident. She attested that she believed Epocrates to be a reliable and widely-used resource, and agreed that she used Epocrates to diagnose a causal link between plaintiff's fibromyalgia diagnosis and her car accident. Rorick agreed that she first treated plaintiff on October 19, 2019, approximately 15 months after the car accident occurred in June 2018. She further agreed that in plaintiff's deposition, plaintiff testified that she experienced some symptoms typical of fibromyalgia before the June 2018 car accident. Rorick stated that at her appointment, plaintiff did not mention experiencing any fibromyalgia related symptoms before the accident.

Following Rorick's testimony, plaintiff's counsel noted that he did not intend to call Rorick as an expert witness and instead wished to call her as a treating physician to give opinion testimony about plaintiff's condition. Defendant's counsel responded that plaintiff would need to present an expert witness on the issue of causation and that the point of the *Daubert* hearing was to determine

---

[1] As a result of the dismissal, Farm Bureau does not participate in this appeal. Accordingly, all references to "defendant" are references only to Mary Kosar.

[2] *Daubert v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993).

whether Rorick could be qualified as an expert. Defendant's counsel also noted that plaintiff had not presented a witness list with any potential expert witnesses listed on it. Defendant's counsel requested that the matter be adjourned and indicated that a motion for summary disposition would be forthcoming. The hearing was then adjourned.

In March 2023, defendant moved for summary disposition under MCR 2.116(C)(10). Defendant argued that summary disposition was proper because plaintiff could not establish a causal connection between her diagnosis of fibromyalgia and defendant's alleged negligence. Defendant explained that in order to show a causal link between the fibromyalgia diagnosis and the car accident, plaintiff would need to present expert testimony, particularly because the actual cause of fibromyalgia is not well understood. Defendant contended that plaintiff had not presented an expert witness, noting that Rorick was merely intended to be a fact witness, as admitted by plaintiff's counsel.

Defendant further argued that even if Rorick were presented as an expert witness, her testimony regarding causation was unreliable. Defendant explained that the only source Rorick cited as a basis for her conclusion that plaintiff's fibromyalgia was caused by the car accident was the online resource Epocrates, which is largely meant to be used to check drug interactions and pharmaceutical information, rather than to diagnose patients. Further, Rorick's only other basis for finding a causal link between plaintiff's fibromyalgia diagnosis and the car accident was the fact that plaintiff only developed the disease after the car accident occurred. A temporal relationship, argued defendant, is not enough to demonstrate causation. Defendant thus argued that plaintiff could not establish causation, and that her claim against defendant should be dismissed.

Plaintiff filed an answer on March 20, 2023. She contended that Rorick could testify as an expert witness in support of plaintiff's theory of causation even if she was not qualified as an expert witness. Plaintiff further argued that Rorick's causation testimony, as presented at the *Daubert* hearing, was sound and reliable. She explained that Epocrates was an application used by over one million doctors nationwide, and that it could be used for diagnostic purposes, not just to verify drug interactions or pharmaceutical information. Thus, said plaintiff, Rorick's causation testimony was based on a trustworthy foundation, and she could be qualified as an expert witness.

Additionally, if Rorick could not be qualified as an expert, plaintiff argued that Dr. Ryan O'Connor, who treated plaintiff before the *Daubert* hearing took place, could testify as an expert in support of plaintiff's causation theory. Plaintiff acknowledged that Dr. O'Connor was not on her witness list, but explained that this was so because her counsel was not made aware that she had seen Dr. O'Connor until after the *Daubert* hearing took place. Plaintiff asked that the motion for summary disposition be denied in order to allow plaintiff time to submit an amended witness list and to take Dr. O'Connor's deposition. Plaintiff contended that allowing the case to proceed at a slower pace before trial would minimize any prejudice to defendant.

Defendant replied that Rorick's so-called causation theory confused correlation with causation, was based on unreliable information, and ultimately amounted to mere speculation. Defendant further contended that plaintiff should not be allowed to introduce Dr. O'Connor as an expert witness, noting that plaintiff's original witness list was untimely and that plaintiff was only now trying to find an expert to support her causation theory. Defendant argued that plaintiff had

made no real effort to demonstrate good cause for the late addition. Defendant thus asked the court to overlook plaintiff's attempts to keep her case alive and instead grant defendant's motion for summary disposition.

A hearing on the motion took place in April 2023, and the parties largely argued consistent with their briefs. The trial court observed that despite stating at the *Daubert* hearing that Rorick was only being presented as a fact witness, plaintiff was now backpedaling and attempting to have Rorick introduced as an expert witness. Plaintiff's counsel averred that he did not mean to state that Rorick was only intended to be a fact witness and that he wished to have her qualified as an expert. Regarding plaintiff's attempt to add Dr. O'Connor as an expert witness, the court observed that it did not believe plaintiff's counsel acted in bad faith by failing to mention Dr. O'Connor before the *Daubert* hearing. Nevertheless, the trial court ultimately chose to grant defendant's motion for summary disposition, reasoning:

> I think that I have to grant summary disposition motion, not because [plaintiff's counsel] . . . said that they . . . didn't intend to call [Rorick] as an expert, but I think that her—her testimony, as to causation, is insufficient to support her. I think that she's qualified. I think she's very competent and I think that she could qualify as an expert and, if asked to do so, I would certainly be—be inclined to qualify her, based upon her years of experience, but the problem is that, as it relates to her specific diagnosis with this particular plaintiff, her testimony fails to establish the appropriate nexus for causation, under the requisite case law and I think, under the circumstances, I think I'm required to grant the motion for summary disposition . . . . [A]s much as . . . I may want to allow you an opportunity to amend your witness list and reopen discovery to allow you to have a new expert added that—with this new person that she sought treatment with, after the fact, I don't think that that would be fair. I think would be unfairly prejudicial, at this juncture, to allow you to do that, and I don't think there is any basis of authority for me to grant the alternate relief. Your request is, respectfully, I think, at this point, given the amount of—I think if it had been—the request had been made sooner, it's—it we're six months after you guys were here for this and . . . at this point, when the summary disposition motion that we . . . knew or should have known was forthcoming, after her testimony, to wait until now to ask for this alternative relief, would be unfairly prejudicial to the defendant. So, I'm gonna [sic] deny your request for alternate relief and I'm gonna [sic] grant the motion for summary disposition on behalf of the defendant, for the reasons stated on the record.

An order granting the motion for summary disposition was entered later that same day. This appeal followed.

## II. ANALYSIS

Plaintiff argues that the trial court erred by declining to allow her to introduce either Rorick or Dr. O'Connor as an expert witness in support of the theory that her fibromyalgia was caused by the car accident. We disagree.[3]

The trial court granted summary disposition to defendant under MCR 2.116(C)(10). This Court reviews de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) "tests the factual sufficiency of a claim." *Id*. at 160 (citation and emphasis omitted). In considering a motion under MCR 2.116(C)(10), the trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. The motion "may only be granted when there is no genuine issue of material fact." *Id*. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

This Court reviews a trial court's ruling concerning the qualification of a proposed expert witness, as well as whether to permit the addition of an expert witness, for an abuse of discretion. *Crego v Edward W Sparrow Hosp Ass'n*, 327 Mich App 525, 529; 937 NW2d 380 (2019); *Cox v*

---

[3] As an initial matter, we note that the table of contents and the substance of plaintiff's brief do not match her statement of the issues. In the body of the brief, plaintiff's Issue II asks "[w]hether the court erred in disallowing an alternative witness or subsequent expert witness (doctor) who would have testified that plaintiff's fibromyalgia diagnosis was linked to her auto accident, who was not previously on plaintiff's witness list, but revealed after the evidentiary hearing." This question is not listed in her statement of the issues; Issue II instead concerns the weight and admissibility of expert testimony.

In general, if an issue is not contained in the statement of questions presented, it is waived on appeal. *Seifeddine v Jaber*, 327 Mich App 514, 521; 934 NW2d 64 (2019); MCR 7.212(C)(5). Similarly, if an issue is presented in the statement of issues, but is not substantively addressed in the body of the brief, it is considered abandoned. See *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008) ("A party abandons a claim when it fails to make a meaningful argument in support of its position."). Nevertheless, plaintiff discusses the issue in full and cites authority in support of her arguments. Likewise, defendant addresses those arguments despite plaintiff's failure to include them in her statement of the issues. Accordingly, we will address plaintiff's arguments as though they were properly presented on appeal. See *Mack v Detroit*, 467 Mich 186, 207; 649 NW2d 47 (2002) ("[A]ddressing a controlling legal issue despite the failure of the parties to properly frame the issue is a well understood judicial principle."); *Tingley v Kortz*, 262 Mich App 583, 588; 688 NW2d 291 (2004) ("[T]his Court possesses the discretion to review a legal issue not raised by the parties.").

*Hartman*, 322 Mich App 292, 312; 911 NW2d 219 (2017). Questions of law underlying an evidentiary ruling are reviewed de novo. *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016).

## A. CAUSATION

In general, the no-fault act, MCL 500.3101 *et seq*., limited traditional tort liability for automobile accidents in exchange for "a compulsory motor vehicle insurance program under which insureds may recover directly from their insurers, without regard to fault, for qualifying economic losses arising from motor vehicle incidents." *McCormick v Carrier*, 487 Mich 180, 189; 795 NW2d 517 (2010). Under the no-fault act, a defendant may be liable in tort for an automobile accident only in certain circumstances. *Id*. Specifically, "[a] person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1).

Here, the question is whether plaintiff's fibromyalgia was caused by the car accident. "Causation is an issue that is typically reserved for the trier of fact unless there is no dispute of material fact." *Patrick v Turkelson*, 322 Mich App 595, 616; 913 NW2d 369 (2018) (citation omitted). Establishing causation in the no-fault context requires plaintiff to show that the other driver's conduct was a cause in fact and a legal cause of their injuries. *Wilkinson v Lee*, 463 Mich 388, 391; 617 NW2d 305 (2000). Cause in fact "requires the plaintiff to present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Patrick*, 322 Mich App at 617 (citation and quotation marks omitted). "[L]egal causation," on the other hand, is "that which operates to produce particular consequences without the intervention of any independent, unforeseen cause, without which the injuries would not have occurred." *Helmus v Mich Dep't of Transp*, 238 Mich App 250, 256; 604 NW2d 793 (1999).

"To be adequate, a plaintiff's circumstantial proof must facilitate reasonable inferences of causation, not mere speculation." *Skinner v Square D Co*, 445 Mich 153, 164; 516 NW2d 475 (1994). "[T]he basic legal distinction between a reasonable inference and impermissible conjecture with regard to causal proof" is as follows:

> As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be 2 or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any 1 of them, they remain conjectures only. On the other hand, if there is evidence which points to any 1 theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence. [*Id*., quoting *Kaminski v Grand Trunk Western R Co*, 347 Mich 417, 422; 79 NW2d 899 (1956).]

"[A]t a minimum, a causation theory must have some basis in established fact." *Skinner*, 445 Mich at 164. *Id*. at 164. It is not "sufficient to submit a causation theory that, while factually supported, is, at best, just as possible as any other theory." *Id*. Instead, "the plaintiff must present substantial

evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Id*. at 164-165.

Because this is an issue of medical causation, lay testimony alone that the car accident caused plaintiff's fibromyalgia is insufficient. See, e.g., *Elher*, 499 Mich at 21-22 (requiring expert testimony on negligence in a medical malpractice action unless the matter "is within the common knowledge and experience" of the average juror); *Howard v Feld*, 100 Mich App 271, 273; 298 NW2d 722 (1980) ("Where . . . the contested issue involves medical questions beyond the scope of lay knowledge, such as . . . the causal link between an alleged accident and an injury, testimony by [a] lay witness may be improper."). MRE 702, which governs the admissibility of expert testimony, provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under MRE 702, the trial court must "ensure that each aspect of an expert witness's testimony, including the underlying data and methodology, is reliable" per "the standards of reliability that the United States Supreme Court articulated in *Daubert* . . . ." *Elher*, 499 Mich at 22.

"MCL 600.2955(1) requires the court to determine whether the expert's opinion is reliable and will assist the trier of fact by examining the opinion and its basis, including the facts, technique, methodology, and reasoning relied on by the expert[.]" *Elher*, 499 Mich at 23. Under the statute, the following factors may be considered:

> (a) Whether the opinion and its basis have been subjected to scientific testing and replication.
>
> (b) Whether the opinion and its basis have been subjected to peer review publication.
>
> (c) The existence and maintenance of generally accepted standards governing the application and interpretation of a methodology or technique and whether the opinion and its basis are consistent with those standards.
>
> (d) The known or potential error rate of the opinion and its basis.
>
> (e) The degree to which the opinion and its basis are generally accepted within the relevant expert community. As used in this subdivision, "relevant expert community" means individuals who are knowledgeable in the field of study and are gainfully employed applying that knowledge on the free market.
>
> (f) Whether the basis for the opinion is reliable and whether experts in that field would rely on the same basis to reach the type of opinion being proffered.

(g) Whether the opinion or methodology is relied upon by experts outside of the context of litigation. [MCL 600.2955(1)(a) through (g).]

However, not every factor identified in MCL 600.2955, nor every *Daubert* factor, is relevant in every case. *Elher*, 499 Mich at 24-25.

The record reflects that on July 11, 2018, plaintiff treated with Abigail Scott, FNP, who noted that plaintiff had hypothyroidism and was suffering from lethargy. She then treated with John Wallace, PAC, on July 13, 2018, and Dr. Catherine Zimmerman, D.O., on August 1, 2018. Neither Wallace nor Dr. Zimmerman diagnosed plaintiff with fibromyalgia at that time. Dr. Zimmerman saw plaintiff again on August 18, 2019, and once again no mention of fibromyalgia is included in the medical records. Rorick was the first individual to diagnose plaintiff with fibromyalgia in October 2019, at OMH Medical Group in Indian River, Michigan. In November 2019, plaintiff treated with Dr. Michael Florek, D.O., at the same facility. Dr. Florek diagnosed plaintiff with chronic pain syndrome, but did not confirm the fibromyalgia diagnosis.

In April 2020, plaintiff treated with Dr. Srijana Bakshi, M.D., who diagnosed her with fibromyalgia and noted that the "most likely inciting event is the MVA [motor vehicle accident] from 2018[.]" However, at her deposition, Dr. Bakshi stated that she could not conclusively say that plaintiff's fibromyalgia was caused by the car accident. Additionally, when presented with evidence that plaintiff experienced symptoms of fibromyalgia before the car accident at issue in this case, Dr. Bakshi again confirmed that she could not definitively find that plaintiff's fibromyalgia was related to the car accident involving defendant. Thus, of the witnesses on plaintiff's witness list before the summary disposition proceedings took place, Rorick was the only potential witness willing to testify that there was a causal link between the car accident and plaintiff's fibromyalgia diagnosis.

Defendant does not take issue with Rorick's qualifications as an expert in her field, and instead states that she could not testify as to causation because the foundation for her opinion on that subject was unreliable. Rorick presented two bases for her causation theory at the *Daubert* hearing. The first was that plaintiff did not have fibromyalgia before the car accident, suggesting that the accident was the most likely cause of the disease. The second was that plaintiff's symptoms matched the symptoms of fibromyalgia listed in the medical database Epocrates, in which it was also noted that fibromyalgia is often caused by trauma. Rorick related that the precipitating trauma in this case could have been the car accident.

To survive summary disposition, plaintiff's "causation theory must have some basis in established fact[,]" and "plaintiff must present substantial evidence from which a jury may conclude that more likely than not" the car accident caused her fibromyalgia. *Skinner*, 445 Mich at 164-165. The rationale that plaintiff's fibromyalgia was related to the car accident because plaintiff did not have the disease prior to the car accident is speculative at best. That there is a temporal connection between an event and an injury is not in itself evidence of causation. *Craig v Oakwood Hosp*, 471 Mich 67, 87; 684 NW2d 296 (2004); *West v Gen Motors Corp*, 469 Mich 177, 186; 665 NW2d 468 (2003). Rorick did not elaborate on this theory beyond merely stating that it seemed likely that the fibromyalgia was related to the car accident. Moreover, she agreed that plaintiff had apparently experienced symptoms of fibromyalgia *before* the car accident, suggesting that there might have been some other cause for the disease. Additionally, the

information obtained from the Epocrates medical database does little to support Rorick's claim; at best, according to Epocrates, trauma can be a cause of fibromyalgia. On that basis, Rorick concluded that the car accident caused plaintiff's fibromyalgia. Notably, Rorick never testified that Epocrates directly stated that a car accident could cause fibromyalgia, and she further stated that Epocrates indicated that the disease could also be caused by "infection . . . emotional trauma or war deployment or major surgical procedure." Rorick presented no further scientific data to support her theory of causation.

Ultimately, our Supreme Court has explained that "[t]o be adequate, a plaintiff's circumstantial proof must facilitate reasonable inferences of causation, not mere speculation." *Skinner*, 445 Mich at 164. It is not enough "to submit a causation theory that, while factually supported, is, at best, just as possible as another theory." *Id.* Viewing the transcripts and medical records in the light most favorable to plaintiff, we conclude that plaintiff's theory of causation is not sufficiently supported by scientific data or record evidence. While it is possible that the car accident at issue here could have caused plaintiff's fibromyalgia, it is equally likely that some other factor in plaintiff's life—including emotional or physical trauma from an entirely separate source—could have been the onset for the disease. Accordingly, the trial court did not err by granting defendant's motion for summary disposition and dismissing plaintiff's claim.

## B. AMENDMENT OF WITNESS LIST

As noted, plaintiff also argues that the trial court erred by declining to allow her to add Dr. Ryan O'Connor as an expert witness. The original scheduling order in this case was entered September 23, 2021, and indicated that the filing deadline for witness lists was December 29, 2021. On February 2, 2022, the trial court entered an order extending discovery and moving the deadline for filing witness lists to March 6, 2022. On May 26, 2022, the parties stipulated to extend discovery through the case evaluation deadline, which, according to the original scheduling order, was set for July 2022. Plaintiff did not file a witness list before the July 2022 deadline, and instead filed her first and only witness list on September 6, 2022, nearly two months after the close of discovery. Plaintiff first made mention of Dr. O'Connor as a potential expert witness in her response to defendant's motion for summary disposition, in which her counsel explained that plaintiff had not mentioned that she saw Dr. O'Connor before the *Daubert* hearing. While that may be so, the *Daubert* hearing took place in October 2022, and plaintiff did not file her response to defendant's motion for summary disposition until March 2023. Thus, approximately five months passed with no indication from plaintiff that she had seen another doctor who could serve as an expert witness. Neither plaintiff nor her counsel have presented an explanation for the oversight, other than a general admission from plaintiff's counsel indicating that he did not know plaintiff had gone to see another doctor while the trial court proceedings were ongoing.

Plaintiff argues that the trial court's denial of her request to amend her witness list was a sanction for failing to submit a timely witness list. A trial court may preclude a party from introducing expert witnesses as a sanction for failing to follow discovery orders. MCR 2.313(B)(2)(b). "Witness lists are an element of discovery," and are imposed to avoid "trial by surprise." *Grubor Enterprises, Inc v Krotidis*, 201 Mich App 625, 628; 506 NW2d 614 (1993) (quotation marks and citation omitted). As a case proceeds, the trial court sets a deadline for submitting witness lists and for disclosing any expert witnesses. MCR 2.401(I)(1). If a witness is not disclosed in accordance with the court rule, the trial court has discretion to prevent the witness

from testifying unless good cause for the nondisclosure is shown. MCR 2.401(I)(2). "Disallowing a party to call witnesses can be a severe punishment, equivalent to a dismissal." *Duray Dev, LLC v Perrin*, 288 Mich App 143; 792 NW2d 749 (2010). However,

> that proposition does not mean that disallowing witnesses is always tantamount to a dismissal. Nor does it mean that a trial court cannot impose such a sanction even if it is equivalent to a dismissal. Because the decision is within the trial court's discretion, caselaw mandates that the trial court consider "the circumstances of each case to determine if such a drastic sanction is appropriate." "[T]he record should reflect that the trial court gave careful consideration to the factors involved and considered all of its options in determining what sanction was just and proper in the context of the case before it." Relevant factors can include, but are not limited to,

> > (1) whether the violation was willful [sic] or accidental; (2) the party's history of refusing to comply with discovery requests (or refusal to disclose witnesses); (3) the prejudice to the defendant; (4) actual notice to the defendant of the witness and the length of time prior to trial that the defendant received such actual notice; (5) whether there exists a history of plaintiff's engaging in deliberate delay; (6) the degree of compliance by the plaintiff with other provisions of the court's order; (7) an attempt by the plaintiff to timely cure the defect[;] and (8) whether a lesser sanction would better serve the interests of justice. This list should not be considered exhaustive.

> The trial court should also "determine whether the party can prove the elements of his position based solely on the parties' testimony and any other documentary evidence." [*Duray Dev*, 288 Mich App at 164-165.]

We conclude that plaintiff's reliance on *Duray Dev* and caselaw concerning discovery sanctions is misplaced. Although it is true that plaintiff failed to timely file a witness list, the motion to amend the witness list to add Dr. O'Connor as an expert is a different matter entirely. Notably, plaintiff only attempted to amend the witness list in response to defendant's motion for summary disposition, in which defendant argued that plaintiff's claim should be dismissed because Rorick could not provide expert testimony in support of plaintiff's causation theory. A trial court's decision to allow for the replacement of a disqualified expert—or, in this case, one whose disqualification was imminent—is not equivalent to precluding a witness from testifying as a sanction for untimely discovery. Plaintiff nevertheless argues that denying the amendment of the witness list was a severe sanction, and claims that defendant would not have been prejudiced by the amendment of the witness list had the court extended discovery and set a date for trial. But plaintiff overlooks that by the time she sought to amend her witness list, discovery had been completed, and would have had to be reopened in order for a new expert to be admitted. On this record, the trial court's decision to deny the attempt to amend the witness list did not fall outside the range of reasonable and principled outcomes. Thus, the trial court did not abuse its discretion by denying plaintiff's motion to amend the witness list.

Affirmed.

/s/ Kathleen A. Feeney
/s/ Michael J. Kelly
/s/ Michelle M. Rick